UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| GEICO INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-231-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ZACHARY I. CRAWFORD, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Plaintiff GEICO Indemnity Company's motion for judgment on the pleadings or, in the alternative, motion for summary judgment. [Record No. 14] GEICO argues that the policy in issue does not provide a defense or indemnity to Defendant Zachary Crawford ("Crawford"). [Record No. 14-1, p. 3] Conversely, Defendants Crawford, Devan Wiedeman, Gregory Collins, and Hamilton Mutual Insurance Company contend that, under Kentucky law, GEICO must provide coverage to Zachary Crawford. [Record No. 16, p. 13; Record No. 17, pp.4-5; Record No. 18, p. 6] For the reasons discussed below the Court will grant GEICO's motion.

**I.**

This action arises out of an automobile accident occurring in Madison County, Kentucky. [Record No. 1, p. 5] At the time of the accident, Defendant Crawford was driving a 2002 Jeep Grand Cherokee Limited ("Jeep") owned by Defendant Linda Bellaw. Defendant Wiedeman was a passenger in the Jeep. Defendant Collins was driving another automobile involved in the

accident. [Record No. 16, pp. 3-4; Record No. 20-1] The accident resulted in serious injuries to Defendants Wiedeman and Collins. [Record No. 15-2, p. 2; Record No. 19-2, p. 2] Wiedeman and Collins sued Crawford in state court alleging that Crawford caused the accident and their resulting injuries. [Record Nos. 15-3, 19-2] At the time of the accident, Crawford was insured by Defendant Hamilton Mutual Insurance Company ("Hamilton"). [Record No 1, p. 7] Defendant Bellaw, an Ohio resident, was the named insured on a policy issued by GEICO. [Record No. 1-1, pp. 3, 5]

The policy contains an escape clause allowing coverage for permissive users. The clause provides:

> [A]ny other person who is using the auto with your permission [will be covered] but only if such a person is not insured by any other vehicle liability insurance policy, a self-insurance liability program, or a liability bond while using the auto.

[*Id.*, p. 4] The policy also contains a choice-of-law provision stating that "[t]he policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Ohio." [Record No. 1-1, p. 16] Linda Bellaw's daughter, Defendant Jennifer Bellaw, was listed as an additional driver and the Jeep is listed as a covered vehicle in the policy. [*Id.*, p. 5] The defendants contend that Jennifer Bellaw was a resident of Kentucky for five years and that the Jeep was principally located in Kentucky during that period. [Record No. 16, p. 3; Record No. 17, p. 7]

GEICO initiated this action by seeking declaratory judgment under 28 U.S.C. § 2201. [Record No. 1] It seeks a declaration of rights, finding that it has no duty to defend or indemnify Crawford for any claims against him arising from the accident. [Record No. 1, p. 8] Conversely,

the defendants seek a judgment declaring that the GEICO policy provides coverage to Crawford and that the coverage is primary to the Hamilton policy. [Record No. 18, p. 3]

**II.**

The Court may grant judgment on the pleadings when the moving party "is entitled to judgment as a matter of law." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006). The Court must take all the "well pleaded material allegations of the pleadings of the opposing party" as true. *Id.* Further, on a motion for judgment on the pleadings, the Court may look only to the pleadings themselves and exhibits incorporated by reference into the complaint. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). The Court is explicitly limited to the facts alleged within the pleadings.

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot simply rely upon the assertions in its pleadings; instead, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.

GEICO argues that Ohio law governs the interpretation and application of the policy. It contends that, under Ohio law, it is not required to provide coverage to Crawford. Further, GEICO asserts that even if Kentucky law applies, the policy would not provide coverage. [*See* Record No. 14-1.] In response, the defendants assert that Kentucky law applies and that the escape clause in the subject policy is void under Kentucky law.

### A. The Choice of Law Provision

Because federal courts apply the conflict of law rules of the forum state, Kentucky choice-of-law rules govern the Court's analysis. *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010). The traditional choice-of-law for a breach of contract claim is set out in §§ 187 and 188 of the Restatement (Second) of Conflict of Laws. *Wallace Hardware Co., Inc v. Abrams*, 223 F.3d 382, 397-98 (6th Cir. 2000). Section 187 applies if there

is a choice-of-law provision within the contract. Alternatively, § 188 — "the most significant relationship test" — applies when there is no such provision. *Id.*

Section 187 is met when there is an express term in the contract that controls the issues being litigated. *Link-Belt Construction Equip. Co., L.P. v. Road Machinery & Supplies Co.*, No. 10-103-KSF, 2011 U.S. Dist LEXIS 41404 (E.D. Ky. Apr. 15, 2011). Here, the policy's choice-of-law provision states "[t]he policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Ohio." [Record No. 1-1, p. 16] The escape clause in the policy resolves the issue currently being litigated — the scope of coverage when a permissive driver has other applicable insurance coverage. Thus, the choice-of-law clause is enforceable and Ohio law governs this dispute under § 187.

### B. The Public Policy Exception

The defendants argue that Kentucky's public policy exception mandates application of Kentucky law. [Record No. 16, p. 5; Record No. 17, p. 4; Record No. 18, p. 6] Notwithstanding the traditional choice-of-law analysis, courts in Kentucky "have traditionally refused to apply the law of another state if that state's law violates a public policy as declared by the Kentucky legislature or courts." *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 35 (Ky. 2004). However, courts should not utilize the public policy exception simply because the outcome would be different under another state's law or because the contract would be unenforceable in Kentucky according to public policy. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 882 (Ky. 2013). Additionally, "[c]ourts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement

of strong public policy in controlling laws or judicial precedent." *Id.* at 880. The public policy exception should only be implemented when it is found that the public policy is "clearly expressed in the applicable law." *Id.* at 881. In the present case, because the policy selects Ohio law, the issue becomes whether the application of that law violates Kentucky public policy.

Under Ohio law, the subject policy would be enforceable and Crawford would not be covered. When interpreting insurance contracts according to Ohio law, the clear language of an insurance policy is enforced as written. *Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995). The language of the escape clause is unambiguous. As previously noted, it provides:

> [A]ny other person who is using the auto with your permission [will be covered] but only if such a person is not insured by any other vehicle liability insurance policy, a self-insurance liability program, or a liability bond while using the auto.

[Record No. 1-1, p. 4]

Crawford is covered by other vehicle liability insurance by Hamilton. [*See* Record Nos. 20-3 and 20-4] Indeed, Hamilton and Crawford admit that the Hamilton policy provides coverage for the accident. [Record No. 12, p. 5, ¶ 33] Therefore, under the plain language of the policy, the GEICO policy would not provide coverage. *See GEICO Gen. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, No. C-070733 2008 Ohio App. LEXIS 3478 (Ohio Ct. App. Aug. 15, 2008) (holding that language substantially similar to the provision at issue here was enforceable under Ohio law).

The defendants also contend that Kentucky's Motor Vehicle Reparations Act ("MVRA") reflects a policy that ensures that the victims of automobile accidents occurring in-state are fully

compensated. They assert that application of the policy's escape clause would remove all liability coverage from GEICO and would prevent full recovery by the defendants. In *Marley*, the Supreme Court of Kentucky stated that "[i]t is the clear public policy of Kentucky . . . to ensure that victims of motor vehicle accidents on Kentucky highways are fully compensated." 151 S.W.3d at 36. However, that court has also stated that:

> contracts voluntarily made between competent persons are not to be set aside lightly. As the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of public policy or illegality.

*Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954). While there is a public policy goal of insuring that motor vehicle accident victims are properly compensated, Kentucky's highest court has also held that "[t]he public policy expressed in the [MVRA] is that every victim of a motor vehicle accident will be able to recover the statutory minimum sum towards satisfaction of any judgment obtained. No public policy would be advanced by enforcing contractual terms that exceed the required coverage." *Progressive N. Ins. Co. v. Corder*, 15 S.W.3d 381, 384 (Ky. 2000).

Likewise, the defendants have not shown that the public policy expressed in the MVRA would require application of Kentucky law. The public policy concern regarding the specific policy language at issue has not been "clearly expressed" to require the application of Kentucky law to invalidate the escape clause contained in the policy in dispute. Moreover, application of Ohio law would not violate the MVRA. Defendant Crawford is covered by liability insurance and has more than the minimum amount of coverage required by Kentucky law — $25,000 per person and $50,000 per accident. *See* KRS § 305.39-110. Crawford's policy with Hamilton has

a limit of $250,000.00 per person and $500,000.00 per accident.  Additionally, he has a $1,000,000.00 umbrella policy with Employers Mutual Casualty Company.  [*See* Record Nos. 20-3 and 20-4]  The coverage provided by Hamilton satisfies the MVRA's goal of providing "continuous liability coverage" and furnishes "a source and means of recovery." *Nat'l Ins. Ass'n v. Peach*, 926 S.W.2d 859, 861 (Ky. Ct. App. 1996).

The defendants also argue that, even though Crawford is covered by substantially more than the statutory requirements, the Court must apply the narrow public policy exception to invalidate an escape clause that has not been expressly and clearly held to violate Kentucky public policy by the legislature.  While the escape clause may be unenforceable under Kentucky law, that does not require the application of Kentucky law.  Again, as the Supreme Court of Kentucky has opined, "[i]f the mere fact that Kentucky law differed from a sister state's law were enough to require the application of Kentucky law . . . then there would be no choice of law question, for Kentucky law would always apply in Kentucky courts." *Hodkiss-Warrick*, 413 S.W.3d at 882.  However, that is what the defendants argue.  Application of the defendants' broad interpretation of the public policy exception would require applying Kentucky law every time an insurance contract would provide coverage under Kentucky law but not another state's, if there were a risk of not fully compensating the accident victims, even if those victims were already covered by another policy in excess of the requirements of the MVRA.  Further, the defendants have not identified any specific provision of the MVRA forbidding the escape clause at issue.  Therefore, the public policy reflected in the MVRA does not require application of Kentucky law.

The defendants also claim that the policy contains a standard escape clause, thereby violating the public policy of Kentucky and requiring the implementation of Kentucky law to govern its application. [Record No. 24, p. 3 citing *Great Am. Ins. Co. v. Lawyers Mut. Ins. Co. of Kentucky*, 492 F. Supp. 2d 709, 714 (W.D. Ky. 2007). A standard escape clause is one that "simply negatives any liability if other insurance is available to the insured" *Great American Assur. Co. v. American Cas. Co. of Reading Pa.,* 511 F. App'x. 431, 436 (6th Cir. 2013) (citation omitted).[1] In the present case, the escape clause does not contain language indicating the express anticipation of primary or excess insurance. The policy generally provides coverage to permissive drivers of covered vehicles. It states that drivers who are either not the policy holder or a resident relative of the policy holder are covered, but only if they do not have "any other vehicle liability insurance policy, a self-insurance program, or a liability bond while using the auto." [Record No. 1-1, p. 4] This serves as a disclaimer of liability and coverage solely because of the existence of other insurance. Therefore, this clause is standard and would not be enforceable under Kentucky law.

However, as discussed previously, although a contract may not be enforceable if made in Kentucky, it does not mean that it is against public policy to enforce the contract if it is valid where it was made. *Hodkiss-Warrick*, 413 S.W.3d at 882. The Supreme Court of Kentucky has held that "[t]he establishment of public policy is not within the authority of the courts . . . it is the prerogative of the legislature to declare that acts constitute a violation of public policy." *Ky*

---

[1] Conversely, a non-standard escape clause "specifically contemplates the existence of other insurance coverage." *Lawyers Mut.*, 492 F. Supp. 2d at 714. Non-standard clauses have been held to be enforceable in Kentucky. *Gov't Emp. Ins. Co. v. Globe Indem. Co.*, 415 S.W.2d 581, 581(Ky. 1967).

*Farm Bureau Mut. Ins. Co. v. Thompson*, 1 S.W.3d 475, 476-77 (Ky. 1999) (quoting *Commonwealth v. Wilkinson, Ky.*, 828 S.W.2d 610, 614 (Ky. 1992) overruled on other grounds by *Com. ex rel. Conway v. Thompson*, 300 S.W.3d 152 (Ky. 2009)). Thus, while the escape clause would be unenforceable under Kentucky law, it does not require application of Kentucky law. There is simply not a "clear and certain statement of strong public policy in controlling laws or judicial precedent." *Hodgkiss-Warrick*, 413 S.W.3d at 880. Courts should not use the public policy exception merely because the outcome would be different under another state's law. As stated above, the policy is enforceable under Ohio law. While unenforceable under Kentucky law, the mere presence of a standard escape clause does not require the application of the limited public policy exception.

Next, The defendants contend that applying Ohio law would violate public policy as described in *Kentucky Farm Bureau Mutual Insurance Company v. Shelter Mutual Insurance Company*, 326 S.W.3d 803, 811 (Ky. 2004). The issue presented in *Shelter* concerned two competing excess clauses and the question of which policy was primary in light of those clauses. The Supreme Court of Kentucky held that, when there are two competing excess clauses, the vehicle owner's policy would be primary. *Id* at 810. GEICO properly asserts that, as the policy in issue does not provide coverage, the rule in *Shelter* does not apply. *Shelter* does not require insurance contracts to provide coverage in contravention of the plain language of the policy. The court in *Shelter* adopted a bright-line rule regarding conflicting excess clauses as ascertained from the legislative intent behind the Motor Vehicle Reparations Act ("MVRA"). *Id*. *Shelter* does not make "a clear and certain statement of strong public policy" of applying Kentucky law

under the public policy exception to invalidate an escape clause that was valid where made. Because the public policy exception does not require application of Kentucky law, the choice-of-law provision is effective and selects Ohio law.

### C. Issue of Fact

The defendants also contend that GEICO's motion should be denied because of factual dispute regarding Jennifer Bellaw's residence and the principal location of the Jeep. [Record No. 16, p. 13; Record No. 17, p. 6; Record No. 18, p. 4] According to the defendants, this impacts the choice-of-law analysis. [*Id.*]

As discussed above, the choice-of-law provision controls the selection of state law. Further, if there was no express choice-of-law provision, Ohio law would still apply and the location of Jennifer Bellaw and the Jeep would not affect the choice-of-law analysis. If § 187 of the Restatement (Second) of Conflicts of Law does not apply, § 188 determines which state's law would be applied. *Wallace*, 223 F.3d at 397-98. To supplement the § 188 analysis, courts utilize § 193 of the Restatement for the interpretation of insurance contracts specifically. *Asher*, 737 F. Supp. 2d at 673. Section 193 provides that "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state *which the parties understood was to be the principal location of the insured risk during the term of the policy . . . .*" Restatement (Second) of Conflict of Laws § 193 (1971) (emphasis added). If there is no principal location of the insured risk, the determination of the applicable state law is governed by § 188. *Asher*, 737 F. Supp. 2d at 673. Principal location of the risk means that, if "the insured risk is located in more than one state, then the court should apply the law of the

*one* state where the parties understood the risk to be *principally* located." *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 152-53 (2d Cir. 2003).

The policy in dispute was issued to the sole named insured, Linda Bellaw, an Ohio resident. [Record No. 1-1, p. 3] Jennifer Bellaw is one of two others identified in the policy, but she is listed as an "additional driver" not a named insured. [*Id*.] Importantly, all three vehicles listed in the policy are listed as being located in Middletown, Ohio, including the Jeep. [*Id*.] The policy is captioned "Ohio Family Automobile Insurance Policy". [*Id*., p. 5] The Jeep was owned by Linda Bellaw and registered in Ohio. [Record No. 20-1, p. 4] Although Jennifer Bellaw may have resided in Kentucky along with one of the three vehicles identified in the policy, that does not mean that the parties understood the principal location of the risk to be in Kentucky. The policy is dominated by references to Ohio residents and Ohio vehicles. Therefore, under § 193, Ohio law would apply.

But even if the Court could not make a determination under § 193, Ohio law would still apply. If the principal location of the risk cannot be determined the court must look to the "most significant relationship test." *Asher*, 737 F. Supp. 2d at 673. The Restatement provides that the rights of the parties to a contract are determined by the law of the state that "has the most significant relationship to the transaction[.]" Restatement (Second) Conflicts of Law § 188(1) (1971). Section 188 provides that the contacts to be considered when determining the applicable law are:

(a) place of the contracting,

(b) place of negotiation of the contract,

(c) place of performance,

(d) location of the subject matter of the contract, and

(e) domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id*. at § 188(2).

When resolving insurance contract disputes, the state with the most significant relationship is the state of the named insured, regardless of where the injury occurred. *Cincinnati Ins. Co. v. Crossman Comtys. P'ship*, No. 05-470-KSF, 2008 U.S. Dist. LEXIS 25188 at *7-8 (E.D. Ky. Mar. 28, 2008). In *Crossman*, over 100 claimants were Kentucky residents and the alleged damages also occurred in Kentucky. However, the court held that Indiana law applied to the contract because the "policies were brokered, placed, paid for and delivered in Indiana." *Id*. Here, Linda Bellaw is the named insured and a resident of Ohio. The policy was delivered to an Ohio address and covered vehicles registered in Ohio and represented to be principally located in Ohio. [*See* Record No. 1-1.] The policy was placed, paid for, delivered, and entered in Ohio. According to § 188, Ohio has the most significant contacts. Thus, under the traditional choice-of-law analysis Ohio law would apply regardless of the location of Jennifer Bellaw and the Jeep. In short, genuine issues of material fact do not prevent entry of summary judgment in favor of GEICO.

**IV.**

Under Kentucky choice-of-law rules, Ohio law applies to the interpretation and application of the contract in issue. And under Ohio law, the policy does not provide liability coverage to Crawford for the underlying accident. GEICO has no obligation to defend, provide

liability coverage, or indemnify Crawford for claims of bodily injury or property damage liability asserted against him arising from the May 12, 2013, motor vehicle accident. Accordingly, it is hereby

**ORDERED** as follows:

1. GEICO Indemnity Company's motion for judgment on the pleadings or, in the alternative, motion for summary judgment, [Record No. 14] is **GRANTED**.

2. A separate Judgment shall issue this date.

This 10th day of February, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge